UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TRACY HERTEL,                          )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )        Case No. 3:10-CV-009 JD
                                       )
MICHAEL DVORAK, *et al.*,              )
                                       )
            Defendants.                )

OPINION AND ORDER

I.  Procedural History

      Tracy Hertel, a prisoner confined at the Miami Correctional Facility, filed a typewritten

122 page *pro se* verified complaint pursuant to 42 U.S.C. § 1983, containing 583 rhetorical

paragraphs and naming thirty-one defendants [DE 1].  The Court screened the complaint

pursuant to 28 U.S.C. § 1915A [DE 13], and allowed Hertel to proceed only on his First

Amendment and Fourteenth Amendment claim for damages against St. Joseph County Jail

Property Officer Yolonda Miller-Lewis in her personal capacity for her alleged destruction of

Hertel's legal materials after he was confined at the St. Joseph County Jail and upon his transfer

to the Reception and Diagnostic Center (RDC) on May 1, 2008,[1] thereby impeding his legal

efforts to file civil suits.  All of the other claims asserted against the various defendants were

dismissed.

      Thereafter, Hertel filed a 61 page amended and supplemental verified complaint

containing 343 rhetorical paragraphs [DE 22 ¶¶ 584-927].  After screening the amended

_____

      [1] In early 2008, Hertel was convicted and sentenced in state court on drug related charges.  Hertel
voluntarily turned himself in to the St. Joseph County Jail on or about April 16, 2008.

complaint pursuant to § 1915A, the Court allowed the amended claim under the First and Fourteenth Amendments against Officer Miller-Lewis in her personal capacity alleging she stole Hertel's legal materials which impeded his filing of civil lawsuits (against his former public defender and those involved in the investigation and prosecution of his criminal case) [DE 22 ¶¶ 784-89, 797-800, 802-08]; and, allowed Hertel to proceed against Jail Warden Julie Lawson for damages resulting from alleged violations of the First and Fourteenth Amendments where she was deliberately indifferent to the theft of his legal materials (a personal capacity claim) and she allowed a custom and practice at the jail which resulted in the theft of Hertel's legal materials (an official capacity claim) [DE 22 ¶¶ 809-12, 815-16, 818, 820-23][2]. Although Hertel asserted other claims against Officer Miller-Lewis and Warden Lawson, as well as against other defendants, these claims were all dismissed.

## II. Review of the Magistrate Judge's Orders

During the discovery phase of this lawsuit, the magistrate judge issued orders [DE 94; DE 117], to which Hertel has objected [DE 98; DE 123; DE 125]. The magistrate judge's order ruled on various pending (and somewhat convoluted but certainly overlapping) requests by Hertel, which the undersigned now reviews. In reviewing the magistrate judge's order on non-

---

[2] In his amended complaint, Hertel alleged that he and family members informed Warden Lawson of the theft of his legal material, and that he and other prisoners have informed her of the recurring problem of theft of legal work, but that Warden Lawson took no steps to correct either the specific incidents or the general problem. Based on these allegations, Hertel claims that Warden Lawson condoned the theft of his legal work with her deliberate indifference, and failed to train jail staff despite her knowledge that employees were routinely stealing property and failing in their duty to uphold prisoners' constitutional rights in this respect.

dispositive matters,[3] the undersigned must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *see Weeks v. Samsung Heavy Indust. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997).

First, the magistrate judge indicated that Hertel was not entitled to a summary ruling as requested in DE 96, because the defendants' response to Hertel's first motion for summary judgment ("MSJ") was timely. But per DE 96 and DE 106, Hertel was not seeking a summary ruling on his first MSJ (docketed on November 18, 2013 [DE 74]); rather, Hertel explicitly sought a summary ruling on his second MSJ (which was mailed on December 17, 2013 [DE 86 at 24] and docketed on December 23, 2013 [DE 86]). On December 16, 2013, defendants did in fact timely respond [DE 85] to Hertel's first MSJ, but they never responded to Hertel's second MSJ. Despite this confusion, the undersigned agrees that a summary ruling is inappropriate on any of Hertel's summary judgment motions because even without a response the court must still determine whether based on undisputed facts Hertel is entitled to judgment under the applicable law. *Wienco, Inc. v. Katahn Associates, Inc.*, 965 F.2d 565, 568 (7th Cir. 1992) (citing Fed. R. Civ. P. 56(e)). Accordingly, Hertel's requests for summary rulings are **DENIED** [DE 91; DE 96; DE 101; DE 106]; however, the undersigned will consider Hertel's designated facts therein for the purpose of ruling on the underlying motions for summary judgment [DE 74 and DE 86].

To the extent Hertel wanted defendants' response [DE 85] to his first MSJ struck as untimely, the undersigned **DENIES** the request [DE 91], because even Hertel admitted that defendants had until December 19, 2013 to respond, and their response was timely filed on

---

[3] Under Rule 72(a), magistrate judges may rule on non-dispositive pretrial matters, which are automatically referred to a magistrate judge under General Order 2014-7.

December 16, 2013 [DE 85].  It appears Hertel also requested to have defendants' response struck because defendants only argued that Hertel's first MSJ was moot because it was based on subsequently revised discovery responses [DE 91; DE 101].  By way of history, when defendants filed their response [DE 85], also pending was defendants' request to withdraw and amend [DE 78; DE 79; DE 81] a set of *Request for Admissions* (along with accompanying interrogatories) that was sent by Hertel and went unanswered by defendants after thirty days.  The magistrate judge allowed defendants to amend their admissions [DE 94], a decision the magistrate judge later reiterated [DE 117], and to which Hertel has objected ever since [*see, e.g.*, DE 91; DE 92; DE 93; DE 98].  To avoid possible prejudice to Hertel on account of allowing the amended *Request for Admissions* responses, the magistrate judge extended the deadline for the filing of dispositive motions [DE 94].

According to Hertel [DE 92 at 2], on September 20, 2013, he mailed defense counsel and the individual defendants at the St. Joseph County Jail his discovery requests, including the *Request for Admissions*.  Once the *Request for Admissions* was not timely answered, Hertel filed his first MSJ.  The defense has acknowledged that Hertel had mailed defense counsel a copy of the *Request for Admissions*; however, they inadvertently overlooked them because they were placed in another case file.  In addition, defense counsel assumed any discovery from Hertel would be filed via CM/ECF, which is required in *pro se* litigation—but in this case, Hertel had failed to file his *Request for Admissions* with the court.  *See* N.D. Ind. L.R. 26-2(a)(2)(A).  Once Hertel actually filed his *Request for Admissions* on November 18, 2013 [DE 68-70], defendants responded within thirty days by seeking to withdraw and amend the admissions on December 13,

2013 [DE 78].[4] Relative to the requested admissions, defense counsel confirmed that they were not going to dispute that Hertel's legal books and papers were lost and that jail personnel were unable to locate them; however, defendants wished to amend with denials any allegations that there existed a conspiracy or policy to steal or otherwise destroy inmate's legal property from the jail property room.

The magistrate judge determined [DE 94; DE 117] that with good cause shown, and given the lack of bad faith on the part of defendants, the brief nature of the delay, and the policy favoring the presentation of a case on the merits, *see* Rules 16(b) and 36(b), the interests of justice required allowing defendants to amend their responses to the *Request for Admissions*. For the following reasons, the undersigned finds no error in allowing the amended responses.

The magistrate judge correctly applied Rules 16 and 36 in deciding to allow the amended responses. Under Rule 36(b): "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Moreover, Rules 6(b) and 16(b) permitted the belated discovery responses with good cause and excusable neglect shown.

In this case, allowing the withdrawal of the admissions will aid in the presentation of the

---

[4] On November 22, 2013, defendants sought to strike the discovery requests because they were filed on CM/ECF after the date on which discovery was to be initiated [DE 75]. Despite Hertel's contentions to the contrary, this conduct does not speak to any bad faith on the part of defendants who *initially* sought to strike the discovery requests as untimely, until they realized they had in fact been served with said requests, and therefore, defendants subsequently sought leave to provide belated responses. Moreover, any "reasonable reliance" Hertel allegedly placed on the lack of an initial response to the *Request for Admissions* [*see* DE 93] resulted in only minimal delay without sufficient prejudice. *See infra*.

merits of the action. The defendants wish to amend their responses in order to deny allegations that they have been denying since the filing of their answers to the complaint and amended complaint. Moreover, resolution of the merits in this case is preferable to a judgment entered largely because of the inadvertence and excusable neglect of defense counsel who mistakenly placed the discovery in another case file, and because Hertel failed to properly file his discovery requests on CM/ECF (which would have provided further, and rightfully expected, notice to defendants of the *pro se* discovery submissions). *See Lewis v. School Dist. #70*, 523 F.3d 730, 740 (7th Cir. 2008) (reasoning that the determination of excusable neglect is an equitable one, taking account of all relevant circumstances surrounding the party's omission) (citation omitted).

The question which remains is whether Hertel is prejudiced by the subsequent withdrawal. While Hertel's first MSJ relied in part on the initially un-responded to *Request for Admissions* he is of the belief that his first MSJ can still be granted despite the amended admissions [*see*, DE 91 at 4; DE 98 at 7]; and even if not, the magistrate judge gave additional time for Hertel to file further dispositive motions. And although the amended responses came just after the closing of discovery, they were consistent with previous filings by defendants and Hertel has actively litigated this case all along and extensively engaged in the discovery process in order to obtain evidence required in an attempt to prove the matters that would have otherwise been admitted.

Hertel's argument that he postponed conducting any further discovery after October 20, 2013 on the mistaken belief that the *Request for Admissions* would be deemed admitted, is not well taken. First, the magistrate judge had required any discovery to be initiated by October 4, 2013. And second, Hertel actually served additional discovery on defendants on November 18,

2013 [DE 71-1; DE 73].

Despite the amended responses and the closing of the discovery period (on December 6, 2013), Hertel has never been estopped from obtaining additional affidavits or declarations from his own supporting witnesses—even if doing so became more inconvenient because of the relocation of those witnesses [DE 93; DE 98].  In fact, Hertel's January 21, 2014 [DE 95] filing shows that Hertel has continued his attempt at locating key witnesses.  Simply put, the short delay in amending the responses to the *Request for Admissions* has not prevented Hertel from continuing his discovery efforts and prosecuting his claims on the merits.

Ultimately, the denials defendants wish to make are consistent with their previous denials, and there is no showing of bad faith on the part of defendants who immediately sought to respond to the *Request for Admissions* when they became aware of the outstanding discovery. The undersigned concludes that there has been an insufficient showing of prejudice.  The magistrate judge's ruling is affirmed in this respect.

Hertel also objected to the magistrate judge's curtailing of discovery by not allowing Hertel to initiate belated discovery even though the magistrate judge allowed defendants to amend their discovery responses [DE 98; DE 107].  However, magistrate and district courts enjoy extremely broad discretion in controlling discovery. *Jones v. City of Elkhart, Ind*., 737 F.3d 1107, 1115-16 (7th Cir. 2013) ("A district court may only overturn a magistrate's decision if the decision is 'clearly erroneous or is contrary to law.'") (citing Fed. R. Civ. P. 72(a)).[5]

---

[5] In turn, the Seventh Circuit reviews a district court's discovery rulings for abuse of discretion. *Jones*, 737 F.3d at 1116 (noting the district court does not abuse its discretion "unless one or more of the following circumstances is present: (1) the record contains no evidence upon which the court could have rationally based its decision; (2) the decision is based on an erroneous conclusion of law; (3) the decision is based on clearly erroneous factual findings; or (4) the decision clearly appears arbitrary.") (citations
(continued...)

As mentioned, the parties were required to initiate all discovery on or before October 4, 2013. Merely because the magistrate judge allowed defendants to amend their *responses* to Hertel's discovery after the discovery deadlines passed, did not entitle Hertel to *initiate* belated discovery [DE 71-1; DE 73]. In any event, the undersigned has reviewed Hertel's belated discovery (that consisted of additional request for admissions and related interrogatories) which was struck by the magistrate judge as untimely [DE 71-1; DE 73]. Specifically, "set #2" of Hertel's discovery to Warden Lawson [DE 71-1], only concerned events relating to Hertel's criminal prosecution and the fact that no appeal bond was requested by Hertel's criminal trial counsel despite Hertel's good conduct and work history. Set #2 [DE 71-1] contained only three requests that even mentioned one of the defendants (numbered 41, 43, and 86), wherein Hertel sought admissions from Warden Lawson about Officer Miller-Lewis' alleged taking of Hertel's tax return information and two letters discussing whether Skodinski would file a state appeal bond request. But Hertel's first set of propounded discovery already sought information relative to Officer Miller-Lewis' alleged theft of Hertel's legal paperwork [DE 68; DE 69], and therefore the requests were duplicative. Regarding "set #3" [DE 73], which consisted of discovery requests sent to Officer Miller-Lewis from Hertel, the information sought concerned alleged media footage and other events occurring during Hertel's state criminal prosecution. Only three requests (numbered 18, 20, and 22) were specifically relevant to Officer Miller-Lewis' alleged confiscation and destruction of Hertel's legal materials which consisted of media footage documentation [DE 73 at 9]. But these requests were duplicative of Hertel's already-propounded discovery [DE 68; DE 69]. Thus, the undersigned finds no error in the magistrate judge's

[5](...continued)
omitted).

striking Hertel's belated and duplicitous discovery [DE 94; DE 117]. To the extent the propounded discovery may have assisted Hertel in proving his underlying civil claims and damages for denied access to the courts were not frivolous, defense counsel ultimately responded to Hertel's belated discovery by denying the six requests that concerned the individual defendants and acknowledging that defendants were unable to admit or deny the remaining requests due to lack of personal knowledge [DE 83; DE 84]. In the end Hertel received the information he sought and there was no error committed by the magistrate judge in this respect.

Hertel also wanted to conduct more discovery in order to prove that defendants' affidavits (submitted in support of their cross-motion for summary judgment) contained false statements, or in the alternative, Hertel wanted the affidavits struck [DE 100; DE 101; DE 107 at 3-4; DE 111; DE 115]. But the magistrate judge denied Hertel's requests.[6] *Id.*

Specifically, Hertel contends that Warden Lawson lied when she stated: "As far as [she is] aware, there has never been an incident where inmates' possessions or legal materials were deliberately stolen by jail personnel." [DE 88-2 ¶ 5]. Hertel produced evidence of an alleged theft of an inmate's debit card at the St. Joseph County Jail in 2013 by Correctional Officer Trevor Reynolds, which was investigated by Warden Lawson [DE 102; DE 129]. In response, defendants acknowledged that Officer Reynolds was terminated for using an inmate's debit card, but Officer Reynolds maintained he bought the card at a discounted price from the inmate. As a result, Officer Reynolds was convicted of trafficking with an inmate and official misconduct, not theft [DE 104]. Accordingly, defendants assert that Warden Lawson's affidavit testimony is not a misstatement of fact.

---

[6] Whether reviewing the magistrate judge's rulings or deciding the summary judgment related issues in the first instance, the undersigned would reach the same result.

Hertel's recent filing of various public records concerning the 2013 incident involving

Officer Reynolds [DE 129] makes this issue largely moot. The documents filed by Hertel would

allow Hertel to question Warden Lawson relative to her knowledge of other thefts at the jail.

Additionally, allowing any further discovery into this unrelated incident, which occurred five

years after Hertel's legal materials were allegedly stolen, bears no relation to Hertel's claims.

The undersigned notes that defendants' otherwise admissible affidavits are not to be

struck merely because Hertel disagrees with the contents of defendants' proffered testimony.

Defendants are entitled to provide testimony, by way of affidavit or otherwise, for the purpose of

proving their case. In order to rebut defendants' evidence, Hertel is entitled to produce his own

affidavits in support of his summary judgment requests (which he has done), and at trial, Hertel

is entitled to cross-examine defendants' witnesses and attempt to impeach their testimony. In

short, the magistrate judge correctly decided that discovery should not be reconvened so Hertel

can gather additional evidence regarding the unrelated 2013 debit card incident, and Hertel has

not made a meritorious argument for striking defendants' affidavits.

An apparent theme in Hertel's multitude of filings is his allegation that defendants have

not fully cooperated during the discovery process. As a result, Hertel filed a motion to compel

adequate responses to his request for admissions and related interrogatories [DE 108], which was

granted in part by the magistrate judge [DE 117]. The magistrate judge determined the

following:

> The court has reviewed the defendants' discovery responses, and finds that the
> bulk of them are adequate. It is apparent that the defendants responded to the best
> of their recollection and ability, given that the events underlying this lawsuit
> occurred in May 2008, which is now six years ago. The defendants cannot be
> compelled to authenticate documents of which they have no knowledge (such as
> letters Hertel sent to third parties), describe events they do not recall or in which

they had no personal involvement, or produce documents they do not have. Simply because Hertel hoped for more favorable responses does not mean the responses provided are inadequate. However, upon careful consideration, the court finds defendant Lawson's responses to Interrogatory Nos. 4 [relating to *Request for Admission* No. 7] and 7 [relating to *Request for Admission* No. 14] to be incomplete.

The incomplete responses related to (1) the steps (and any written notes) Warden Lawson personally took relative to her investigation into the loss of Hertel's legal materials; and (2) incidents of lost or destroyed inmate property that were brought to Warden Lawson's attention from 2004 through 2008, and the action taken by Warden Lawson to investigate and remedy each situation. In response to the magistrate judge's order, defendants filed supplemental discovery responses and disclosed the material available to them [DE 122]. And with respect to Hertel's request for sanctions, the magistrate judge indicated Hertel would be allowed to recover the costs associated with his motion to compel consistent with Fed. R. Civ. P. 37(a)(5) [DE 128].[7]

It is apparent that per defendants' affirmation [DE 122], they have now responded to Hertel's discovery requests to the best of their recollection and ability. Despite Hertel's protestations to the contrary, the undersigned agrees with the magistrate judge's ruling that defendants cannot be compelled to authenticate documents of which they have no knowledge, produce documents they do not possess, or describe events they do not recall or had no personal involvement. And although Hertel argues defendants have intentionally concealed and destroyed relevant evidence (such as an alleged videotape recording of the property room and written communications concerning Hertel's legal materials) as proof of their bad faith [DE 93 at 6-7;

---

[7] Since the magistrate judge's ruling on Hertel's requested sanctions, Hertel has not filed an objection.

DE 107; DE 113 at 10; DE 124], these unfounded accusations are currently based only on the

unavailability of evidence sought by Hertel, and are insufficient to prove that defendants'

consciously destroyed any evidence. Nor do Hertel's unsupported assertions allow an inference

that the absent evidence contained negative information. *See Everett v. Cook County,* 655 F.3d

723, 726-27 (7th Cir. 2011) (indicating that conscious destruction of documents alone does not

warrant an inference that the documents, if produced, would have contained information adverse

to the defendant's case; rather, in order to draw an inference that the absent documents contained

negative information, it must be shown that the documents were intentionally destroyed in bad

faith) (citations omitted). Accordingly, Hertel cannot rely on a spoilation inference to get him

past summary judgment.

On a somewhat related noted, Hertel believes defendants' January 3, 2014 motion for

summary judgment and supporting briefs were improperly filed [DE 97; DE 99; DE 101; DE

113]. However, Hertel is incorrect because defendants were entitled to file their own motion for

summary judgment [DE 87] before the passing of the dispositive motion deadline of February

28, 2014 [DE 94]. In addition, after Hertel filed his response on January 30, 2014 [DE 97],

defendants timely filed their reply brief on February 17, 2014 [DE 105] per the time

computations set forth in Rule 6. As a result, the undersigned denies Hertel's request to strike

the reply brief as untimely [DE 113]. Moreover, as noted by the magistrate judge, there is no

requirement that the parties' briefs be verified as Hertel contends [DE 97; DE 99; DE 113];

rather, defendants' briefs are signed by counsel in accordance with Rule 11(a) and the arguments

contained therein can properly be considered in ruling on whether summary judgment is

appropriate. Of course, the unverified briefs in support of the pending motions are not

themselves evidence. Finally, despite Hertel's contrary position, the court may simultaneously consider all of the motions for summary judgment. *See, e.g.*, *Rosenbaum v. White,* 692 F.3d 593, 599-600 (7th Cir. 2012) (when considering cross-motions, review of the record requires the court to construe all inferences in favor of the party against whom the motion under consideration is made).

Based on the foregoing, the undersigned **DENIES** any request to strike [DE 97; DE 99; DE 100; DE 101; DE 107; DE 111; DE 113] defendants' filings in support of their motion for summary judgment, and **DENIES** Hertel's objections to the magistrate judge's orders [DE 98; DE 123; DE 125].

### III. Cross Motions for Summary Judgment [DE 74; DE 86; DE 87]

#### A. Standard of Review

On summary judgment, the moving party bears the burden of demonstrating that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). So the court must construe all facts in the light most favorable to the nonmoving party, making all reasonable inferences in its favor. *Cung Hnin v. TOA, LLC*, 751 F.3d 499, 503-04 (7th Cir. 2014). A "material" fact is one the substantive law identifies as impacting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When there is a genuine issue as to any such material fact and a reasonable jury could return a verdict in favor of the nonmoving party, summary judgment is inappropriate. *Id.* Conversely, where a factual record exists that would not allow a rational jury to find for the nonmovant, there is no genuine issue of fact for trial and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v.*

*Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

Though the parties in this case have filed cross-motions for summary judgment [DE 74; DE 86; DE 87], this does not change the standard of review. *M.O. v. Ind. Dep't of Educ.*, 635 F. Supp. 2d 847, 850 (N.D. Ind. 2009). Cross-motions are treated separately under the standards applicable to each. *McKinney v. Cadleway Props, Inc.*, 548 F.3d 496, 504 n.4 (7th Cir. 2008).

**B.      Factual Background**

The crux of the pending motions for summary judgment concern the disputed issue of the defendants' intent. However, the facts surrounding the loss of Hertel's legal documents are largely undisputed except where noted.[8]

After being convicted of drug related charges, Hertel voluntarily surrendered at the St. Joseph County Jail on April 16, 2008 where he remained until he was transferred on May 1, 2008 to the RDC for placement in the Indiana Department of Corrections (IDOC). At the time, Julie Lawson was the jail's warden, and Yolonda Miller-Lewis was the jail's property manager. When he arrived at the jail, Hertel's personal belongings were checked-in and on his "Inmate Property Release Form" Hertel designated Sandra Canniff as the contact person who would retrieve his belongings upon his release or transfer from the jail [DE 88-1; DE 103; DE 122-1 at 1]. At some point, Officer Miller-Lewis advised Hertel that it was the jail's policy to have her call the listed contact person within 72 hours of a prisoner's release to inform the contact person to pick up the property, and items left after thirty days were discarded [DE 88-1; DE 103].

_____

[8] While all of the extensive filings in this case have been considered, the undersigned notes the following documents are particularly relevant for the purpose of ruling on the requests for summary judgment: DE's 74, 74-1 (Hertel's first MSJ), DE 85 (defendants' response), DE 91 (Hertel's designated facts); DE's 86, 86-1, 86-2 (Hertel's second MSJ) and DE's 96, 106, 114, 124 (Hertel's additional statement of facts and designated evidence); and DE's 87, 88, 88-1, 88-2, 90 (defendants' MSJ filings); DE's 97, 97-1, 102, 103 (Hertel's related responses); DE 105 (defendants' reply to their MSJ).

Also upon turning himself in to the St. Joseph County Jail, Hertel brought with him a large box of legal paperwork, approximately forty pounds worth of materials. These documents, in relevant part, included "irreplaceable" paperwork that Hertel needed in order to file time sensitive tort claim notices and then various civil lawsuits—in particular, Hertel intended to file claims for legal malpractice, negligence, fraud, and breach of contract against his former public defender Mr. Skodinski,[9] and claims for defamation and fraud against the prosecutor and state police officers involved in his underlying criminal case[10] [DE 74; DE 86; DE 86-2 at 16-25; DE 106]. After some confusion with unidentified staff that "processed" Hertel into the jail, an unknown jail officer recognized that Hertel was allowed to keep his legal documents with him, which then remained in Hertel's continuous possession until May 1, 2008 [DE 74-1 at 3-7; DE 103].

Upon Hertel's transfer from the jail to RDC on May 1, 2008, Officer Miller-Lewis took Hertel's legal paperwork [DE 74-1 at 3-5], although Officer Miller-Lewis "does not have independent recall of this incident" [DE 78-1 at 10]. Per Hertel, Officer Miller-Lewis claimed it was the jail's policy to confiscate legal paperwork upon transfer as it was not allowed at RDC. *Id*. In reality, the IDOC had a written policy allowing inmates to keep a reasonable amount of legal material [DE 70 at 30; DE 78-1 at 7; DE 78-2 at 14]. Although Officer Miller-Lewis was supposed to contact Sandra Canniff to retrieve the legal paperwork [DE 88-1; DE 74-1 at 3-7],

---

[9] Hertel contends Mr. Skodinski failed to question the jurors about their inconsistent verdicts, explain the consequences of the sentence, file a request for an appeal bond, and properly support the post conviction relief filings with exhibits after losing Hertel's client file and discovery.

[10] Hertel believes the prosecutor and individual police officers defamed Hertel by communicating false statements to the local media which were then published, and that they would not be otherwise shielded from liability on account of immunity.

Hertel and Sandra Canniff claim she never did [DE 74-1; DE 74-1 at 3-7; DE 103]. According to Sandra Canniff and Ryan Canniff, within the thirty day period after Hertel's transfer, they left several messages for Officer Miller-Lewis, Warden Lawson, and Mr. Keith Rininger (formerly the director of inmate affairs at the jail), but the Canniffs were given the run around until they were eventually told that the legal paperwork could not be found [DE 74-1 at 6-7; DE 97-1 at 11].

In a letter dated June 12, 2008, Hertel informed Warden Lawson that Officer Miller-Lewis had confiscated his legal paperwork and that despite "numerous requests" by Hertel's family, the jail had refused to return his legal work [DE 70 at 8-9; DE 74-1 at 3-5]. Hertel noted in his letter that this was a "common practice" and identified other inmates who were having trouble recovering personal property (although not necessarily legal paperwork) from the jail [DE 70 at 8-9; DE 74-1 at 3-5]. Hertel claims Warden Lawson did not respond to his letter [DE 74-1 at 3-5], and after his transfer he was not contacted by anyone from the jail concerning his legal documents [DE 103].

While the "attempted contacts" spaces on Hertel's "Inmate Property Release Form" are blank, Warden Lawson's sticky notes placed on the form[11] would suggest she and Officer Miller-Lewis attempted to contact Sandra Canniff on July 10 and 14, 2008 about obtaining Hertel's property [DE 88-1 at 2; DE 88-2 at 1; DE 122-1 at 1]. But Warden Lawson explicitly admits that she has no personal recollection of these contacts or "of this incident that occurred in 2008" [DE 88-2 at 1]. Despite her limited memory of the relevant events, Warden Lawson attests that she advised Hertel *prior* to his transfer that his box of legal documents was missing [DE 88-2 at

---

[11] The contents of these notes appear to be hearsay and not to be considered for their truth, but they are discussed simply to identify the evidence submitted by defendants.

1]. But clearly, this could not be true, if in fact Hertel remained in possession of his legal materials until his transfer on May 1, 2008, as he claims [DE 74-1 at 3-7; DE 103]. Warden Lawson later admitted (in her supplemental discovery responses), that she "has no idea" what happened to Hertel's box of legal materials and she had "no explanation for its disappearance" [DE 122]. Clearly then, she does not personally know when the legal materials went missing.

Interestingly, Officer Miller-Lewis denies intentionally destroying Hertel's legal documents [DE 78-1 at 17], but she makes no representations about what she actually did with Hertel's documents [DE 88-1] and she admits that she does not even recall the incident [DE 78-1 at 10]. Warden Lawson affirms that based on her knowledge of the incident (which admittedly is sketchy), no one deliberately took Hertel's legal materials [DE 88-2 at 1-2].

Warden Lawson indicates that there is no jail policy to steal or confiscate inmates' possessions or legal materials, although she admits it is impossible to prevent isolated or occasional mishandling of inmate possessions given the thousands of inmates processed in the jail each year [DE 88-2 at 2]. She also indicates that there is no policy or custom in place to *prevent* the constitutional violations that may occur as a result of the confiscation of an inmate's legal paperwork [DE 78-2 at 15]. In fact, Hertel attests that he had been processed into the St. Joseph County Jail several times in 2011 and 2013, and each time the processing staff was unsure whether Hertel could possess his legal paperwork while in the jail, despite the jail's written policy allowing "approved legal materials." [DE 103].

In support of his request for summary judgment, Hertel provides various affidavits, many of which are largely irrelevant to the current proceedings. Most of the affidavits describe incidents unrelated to the proper handling of inmate legal material and occurring long *after*

Hertel's legal documents went missing. However, three affidavits are from inmates housed in other jails who were allowed to take their legal paperwork to RDC in accordance with established IDOC policy. With respect to Hertel's other relevant submissions, they reveal that in January 2004, Donyea Fowler was transferred from the St. Joseph County Jail to the Goshen Jail, at which time the St. Joseph County Jail Warden was Julie Lawson and the Property Officer was Yolanda Miller-Lewis [DE 74-1 at 15]. Upon Ms. Fowler's transfer, Officer Miller-Lewis never called Ms. Fowler's contact person to retrieve her belongings. *Id*. When Ms. Fowler's contact person called the jail, they were unable to locate her personal property. *Id*.

In April 2008, St. Joseph County Jail inmate David Malone was transferred to RDC and Officer Miller-Lewis was the property officer. Although Mr. Malone's contact person was finally able to get Mr. Malone's personal belongings from the jail, this occurred only after Officer Miller-Lewis failed to return phone calls or be present for appointments and a superior officer got involved [DE 70 at 6].

In 2002 and 2007, Deshawn Davidson was an inmate at the St. Joseph County Jail and was transferred to RDC each time [DE 74-1 at 12-14]. In 2002, he was allowed to bring his legal paperwork with him. But, in 2007, Mr. Davidson was not allowed to retain his legal paperwork [DE 74-1 at 12-14].

C.    **Discussion**

Prisoners are entitled to meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817 (1977). "The right of access to the courts is the right of an individual, whether free or incarcerated, to obtain access to the courts without undue interference. The right of individuals to pursue legal redress for claims that have a reasonable basis in law or fact is protected by the

18

First Amendment right to petition and the Fourteenth Amendment right to substantive due process." *Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004). Denial of access to the courts must be intentional; "simple negligence will not support a claim that an official has denied an individual of access to the courts." *Id.* at 291 n.11 (citing *Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir. 1992)). To establish a violation of the right to access the courts, an inmate must show that unjustified acts or conditions hindered his efforts to pursue a legal claim, *Nance v. Vieregge*, 147 F3d. 591, 590 (7th Cir. 1998), and that he suffered actual injury. *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that *Bounds* did not eliminate the actual-injury requirement as a constitutional prerequisite to a prisoner asserting lack of access to the courts). In short, to prevail on his claim, Hertel will have to prove that defendants, acting under color of law, intentionally destroyed Hertel's legal materials which hindered his efforts to pursue a non-frivolous legal claim and that he was harmed by defendants' conduct. *See id.*; *see also*, Federal Civil Jury Instructions of the Seventh Circuit, 8.02 (rev. 2009).

Despite the various elements of an access to courts claim, defendants' summary judgment motion contends only that Hertel "produced no evidence that Officer Miller-Lewis intentionally stole or destroyed his legal materials" [DE 88 at 6], and because there was no deliberate theft of which Warden Lawson was aware, then Warden Lawson did not condone or fail to prevent it [DE 88 at 7]. As discussed below, because defendants' state of mind with respect to the still missing legal documents is a genuinely disputed issue of material fact, their request for summary judgment must be denied.

The Seventh Circuit has confirmed that summary judgment is usually not appropriate in a case involving a weighing of conflicting questions of motive and intent, unless the plaintiff

presents no indication of motive and intent supportive of his position. *Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir. 1992) (granting summary judgment where plaintiffs cited "no evidence whatsoever to support their allegation" that the clerks received a proper complaint and fee and deliberately failed to file it; and reasoning, that even assuming a mistake was made, a mere isolated incident of negligence did not rise to the level of a constitutional violation).

In the instant case, Hertel has submitted admissible evidence, including verified pleadings and signed affidavits, from which a jury could infer that defendants deliberately destroyed his legal materials. Hertel has confirmed under penalties of perjury that upon his transfer to RDC, it was Officer Miller-Lewis who confiscated his legal papers and told him that the documents were not allowed at RDC, when in fact IDOC policy and inmates transferred to RDC from other jails would indicate such legal papers were allowed. It was also Officer Miller-Lewis' admitted duty to contact Sandra Canniff to pickup Hertel's belongings, but both Sandra Canniff and Ryan Canniff attested that Officer Miller-Lewis never contacted them. Neither Officer Miller-Lewis nor Warden Lawson have sufficient independent recollection of their handling of Hertel's legal materials on May 1, 2008 to say otherwise, although they explicitly deny confiscating or destroying the large box containing approximately forty pounds of legal work. But summary judgment is not the appropriate vehicle for making these credibility determinations. And even if the court were to rely on defendants' handwritten notes, those notes indicate that Sandra Canniff was not contacted for over two months after Hertel was transferred—well after the thirty day time frame given for the retrieval of personal property prior to disposition by the jail. And what personal property of Hertel's actually remained at the jail is still unclear.

Per the Canniffs, despite their repeated attempts to contact defendants and arrange a time to obtain Hertel's legal documents and belongings, they were eventually told that Hertel's legal documents could not be located. This delay occurred despite Warden Lawson's initial admission that she knew about the missing legal documents even prior to Hertel's actual transfer—although Warden Lawson later admitted to not recalling the particulars of the incident. And even if the documents were not actually lost until Hertel's transfer, it is undisputed that Hertel's June 12, 2008 letter informed Warden Lawson of the confiscation of his legal materials. Despite her knowledge, the legal materials have yet to be recovered. *See Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (for supervisors to be liable they must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see—in other words, act either knowingly or with deliberate, reckless indifference).

Ultimately, these facts are sufficient to permit an inference by a rational jury, but insufficient to hold as a matter of law, that defendants' sustained the requisite intent with respect to the handling of Hertel's still missing legal documents, which allegedly hindered his efforts to file tort claim notices and related civil lawsuits.[12] *See, e.g., Devbrow v. Gallegos,* 735 F.3d 584, 587 (7th Cir. 2013) (to show that plaintiff's legal materials were actually destroyed by defendants, the plaintiff might have offered, as an example, evidence that he tried to exchange some of the material left in his cell for some of the confiscated material but his request was refused because the confiscated materials were not available). Whether or not defendants intentionally deprived Hertel of his legal documents—the only issue raised in defendants' brief, which they have consistently denied—neither side's request for summary judgment can be

---

[12] The merits of which have yet to be contested by defendants in the summary judgment context.

granted because it would require the court to essentially weigh the evidence, make credibility determinations, and resolve what has turned into a "swearing contest" concerning defendants' intent. *See, e.g., Gregory v. Nunn*, 895 F.2d 413, 415 (7th Cir.1990) (district court erred in dismissing case on grounds that plaintiff had alleged only negligent deprivation of access to courts; plaintiff had sufficiently alleged intentional deprivation).

Relative to Hertel's official capacity claim for damages against Warden Lawson, defendants have moved for summary judgment on the sole basis that Hertel has failed to provide sufficient evidence of a persistent and widespread custom, while Hertel has moved for summary judgment on the sole basis that Warden Lawson is a policymaking official who has approved the unconstitutional taking of inmates' legal materials. *See, e.g., Palka v. City of Chicago,* 662 F.3d 428, 434 (7th Cir. 2011) ("Absent proof that the injury in question was caused by an employee with final policymaking authority or by an express policy or established custom of the municipality, there can be no liability on the part of the municipality itself.").

With respect to defendants' motion for summary judgment, they claimed that Hertel only produced the affidavits of Donyea Fowler and Emilio Sanchez which were insufficient to establish a practice or custom so widespread or persistent that rises to the level of a policy which could fairly be attributed to the municipality [DE 88 at 8-9]. While these affidavits may have been insufficient alone, *see Dye v. Wargo*, 253 F.3d 296, 299 (7th Cir. 2001); *Williams v. Heavener*, 217 F.3d 529, 532 (7th Cir. 2000) (citing *Calusinski v. Kruger,* 24 F.3d 931, 936 (7th Cir. 1994)), Hertel actually produced other evidence. Specifically, Hertel provided affidavits from himself and other former St. Joseph County Jail inmates indicating a general unawareness by jail employees concerning the importance of inmate legal materials, and attesting to the fact

that other personal effects, including legal materials, have more than once been taken upon an inmate's transfer out of the jail at the hands of Officer Miller-Lewis. Given the vast record and cobweb of intermingled pleadings, it is not surprising that the particulars of Hertel's other affidavits were not specifically addressed in the defendants' motion for summary judgment [DE 88]. And to the extent defendants alluded to this other evidence in their reply [DE 105], they did so only generally by arguing that Hertel's affidavits were irrelevant for various reasons. But this argument made in their reply brief was not sufficiently developed so as to permit Hertel (who responded by focusing on Warden Lawson's policymaking authority), let alone this court, a meaningful opportunity to consider whether Hertel's evidence was insufficient as a matter of law to establish a practice or custom. *See Estate of Moreland v. Dieter,* 395 F.3d 747, 759 (7th Cir. 2005) (perfunctory or undeveloped arguments are waived, and plaintiff's attempt to flesh out their argument in the reply was unavailing); *Freeman United Coal Min. Co. v. Office of Workers' Compensation Programs*, 957 F.2d 302, 305 (7th Cir. 1992) (noting that the court has no obligation to consider an issue that is merely raised, but not developed—a doctrine designed for the court's own protection as much as that of an opposing party). Accordingly, the court denies defendants' motion for summary judgment with leave to re-file.

In Hertel's summary judgment request [DE 74], he claims that he is entitled to summary judgment simply because he has established that Warden Lawson was an official policymaker who committed the alleged constitutional deprivation. However, Hertel has not provided sufficient evidence that Warden Lawson is a policymaking official for purposes of municipal liability. Nor did the defendants provide this information when they moved for summary judgment on other grounds or when they responded to Hertel's summary judgement motion,

indicating only that Hertel's motion was based on facts that were subsequently negated by defendants' amended responses to the *Request for Admissions*. Specifically, rather than admissions which would have indicated Warden Lawson was responsible for developing policies and procedures for the jail, the amended responses indicated the Sheriff of St. Joseph County was the final policymaker for the St. Joseph County Jail [DE 78-2 at 5, 12]. Thus, Hertel's request for summary judgment on the basis that Warden Lawson is a policymaker responsible for the violation of his rights must be denied because the evidence upon which his motion relies no longer exists.

Having determined that summary judgment is not appropriate for Hertel or the defendants, any request by Hertel for damages [DE 86] is premature and is **DENIED** at this time.

**D.     Conclusion**

Based on the foregoing, the Court **DENIES with leave to refile** the motions for summary judgment [DE 74; DE 86; DE 87]. In the interest of justice, the court will allow up to and including **Friday, October 31, 2014** for the filing of a subsequent summary judgment motion by any party. However, each party is entitled to file <u>only one</u> motion for summary judgment, and any motion shall identify the evidence at issue with specificity, and shall include relevant arguments within that motion and the supporting documents filed. In other words, the newly filed summary judgment documents may not incorporate by reference arguments or evidence presented in previous filings—that is, <u>the court will only consider the arguments and evidence submitted after the issuance of this order and in support of any newly filed motion</u>.

Of final note, imbedded in one of Hertel's motions was a request for a copy of this district's local rules [DE 111 at 1]. Although the request was made while Hertel was in custody, the clerk is **DIRECTED** to mail Hertel a copy of the Local Rules for the Northern District of Indiana.

SO ORDERED.

ENTERED:   September 26, 2014


_____/s/ JON E. DEGUILIO_____
Judge
United States District Court