UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TRACY HERTEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:10-CV-009 JD |
| | ) |
| MICHAEL DVORAK, et al., | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Tracy Hertel, a former inmate of the Miami Correctional Facility, has been allowed to proceed on his amended claim under the First and Fourteenth Amendments against St. Joseph County Jail Property Officer Miller-Lewis in her personal capacity. Hertel alleges she stole or permanently confiscated his legal materials upon his transfer to the Reception and Diagnostic Center (RDC) on May 1, 2008, which impeded his filing of civil lawsuits (against his former public defender and those involved in the investigation and prosecution of his state criminal case) [DE 22 ¶¶ 784–89, 797–800, 802–08]. Hertel has also been allowed to proceed with his access to courts claim against Jail Warden Julie Lawson for damages under the First and Fourteenth Amendments. *See, e.g., Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004) ("The right of individuals to pursue legal redress for claims that have a reasonable basis in law or fact is protected by the First Amendment right to petition and the Fourteenth Amendment right to substantive due process."). It is alleged that she was deliberately indifferent to the theft of his legal materials (a personal capacity claim) and that she allowed a custom and practice which

1

resulted in the loss of Hertel's legal materials (an official capacity claim)[1] [DE 22 ¶¶ 809–12, 815–16, 818, 820–23]. Although Hertel asserted other claims against Officer Miller-Lewis and Warden Lawson, as well as against other defendants, these claims were all previously dismissed.

On September 26, 2014, this Court denied the parties' cross-motions for summary judgment, but in the interests of justice granted leave to refile. The current motion for summary judgment by Defendants raises only the following issues: 1) Whether Officer Miller-Lewis was in fact personally present on the day in question, giving her an opportunity to confiscate Hertel's legal documents and whether she then intentionally withheld them; 2) Whether Warden Julie Lawson was responsible for creating jail policy and, if so, whether she promoted a widespread practice or custom of not returning prisoner property; and 3) Whether Warden Lawson was aware of the theft of Hertel's legal documents and either condoned it or did nothing to prevent it. For the following reasons, the Defendants' motion for summary judgment is **DENIED**.

## I. Facts

The following facts are undisputed, except where noted: After being convicted of drug related charges, Hertel voluntarily surrendered at the St. Joseph County Jail on April 16, 2008 where he remained until he was transferred on May 1, 2008 to the RDC for placement in the Indiana Department of Corrections (IDOC). At the time, Julie Lawson was the jail's warden, and Yolonda Miller-Lewis was the jail's property manager. Upon turning himself in to the St. Joseph County Jail, Hertel brought with him a large box of legal paperwork, approximately forty

---

[1] In his amended complaint, Hertel alleged that he and family members informed Warden Lawson of the theft of his legal material, and that he and other prisoners have informed her of the recurring problem of theft of legal work, but that Warden Lawson took no steps to correct either the specific incidents or the general problem. Based on these allegations, Hertel claims that Warden Lawson condoned the theft of his legal work by virtue of her deliberate indifference, and failed to train jail staff despite her knowledge that employees were routinely stealing property and failing in their duty to uphold prisoners' constitutional rights in this respect.

pounds worth of materials. These documents, in relevant part, included "irreplaceable" paperwork that Hertel needed in order to file time sensitive tort claim notices and then various civil lawsuits—the merits of which are not being contested in the instant motion.

Per Hertel, upon his transfer from the jail to RDC on May 1, 2008, Officer Miller-Lewis took Hertel's legal paperwork [DE 150-2 at 54], although Officer Miller-Lewis denies being present when Hertel was processed and transferred to RDC [DE 147-3]. Yet, Hertel also specifically recalls Officer Miller-Lewis advising him that it was the jail's policy to confiscate legal paperwork upon transfer as it was not allowed at RDC [DE 150-2 at 54]. No one disputes that Hertel should have been allowed to keep a reasonable amount of legal material at both the jail and RDC, and the jail did not have an actual policy of confiscating inmate legal documents [DE 147-1 at 2]. Because Hertel designated Sandra Canniff on his "Inmate Property Release Form" as the contact person who would retrieve his belongings within thirty days of his transfer from the jail, Officer Miller-Lewis was responsible for contacting Sandra Canniff to retrieve the legal paperwork [DE 147-2], but Hertel and Sandra Canniff claim she never did [DE 150-2 at 10, 54]. According to Sandra Canniff and Ryan Canniff, within the thirty day period after Hertel's transfer, they left several messages for Officer Miller-Lewis, Warden Lawson, and Keith Rininger (formerly the director of inmate affairs at the jail), but the Canniff's were given the run around until they were eventually told that the legal paperwork could not be found [DE 150-2 at 10–12].

In a letter dated June 12, 2008, Hertel informed Warden Lawson that Officer Miller-Lewis had confiscated his legal paperwork and that despite "numerous requests" by Hertel's family, the jail had refused to return his legal work [DE 150-2 at 54, 57–58]. Hertel noted in his

3

letter that this was a "common practice" and identified other inmates who were having trouble recovering personal property (although not necessarily legal paperwork) from the jail [DE 150-2 at 54]. Hertel claims Warden Lawson did not respond to his letter, and after his transfer he was not contacted by anyone from the jail concerning his legal documents [DE 150-2 at 54–55]. Hertel has made repeated trips to and from the IDOC and Saint Joseph County Jail in more recent years, and he continually experiences problems with employees attempting to take away his legal paperwork [DE 150-2 at 55].

While the "attempted contacts" spaces on Hertel's "Inmate Property Release Form" are blank, Warden Lawson verified that she has notes suggesting she and Officer Miller-Lewis attempted to contact Sandra Canniff on July 10 and 14, 2008 about obtaining Hertel's property [DE 147-1 at 1]. But Warden Lawson explicitly admits that she has no personal recollection "of this incident" [DE 147-1 at 1]. Despite her limited memory of the relevant events, Warden Lawson attests that she advised Hertel prior to his transfer that his box of legal documents was missing [DE 147-1 at 1]. But clearly, this is inconsistent with Hertel's sworn affidavit where he alleges that he remained in possession of his legal materials until his transfer on May 1, 2008 [DE 150-2 at 54]. For purposes of summary judgment (because the court must construe all disputed facts in Hertel's favor), it can thus be inferred that the legal materials went missing upon Hertel's transfer, and that Warden Lawson did not respond (within thirty days after Hertel's transfer) to the numerous phone calls by Sandra and Ryan Canniff.

Interestingly, Officer Miller-Lewis claims for the first time that she was not even present when Hertel was processed to RDC because those inmate transfers take place before 6:00 a.m., which is prior to her scheduled shift [DE 147-3]. However, Hertel claims he wasn't released to

4

booking until after 7:00 a.m. and wasn't released to RDC until after 8:00 a.m. [DE 147-1 at 6].[2] Thus, for the purpose of summary judgment (and as discussed later), it can be inferred from Hertel's affidavit that Officer Miller-Lewis was in fact present when his legal materials were confiscated.

Warden Lawson indicates that there is no jail policy to steal or confiscate inmates' possessions or legal materials, although she admits it is impossible to prevent isolated or occasional mishandling of inmate possessions given the thousands of inmates processed in the jail each year [DE 147-1 at 2]. And while Warden Lawson denied in her (unsigned) interrogatory responses to being a final policymaker with regards to certain jail policy [DE 147-4], Hertel has produced jail inspection reports from June 2008 and July 2013 which list the Warden as the designee of the Sheriff for purposes of reviewing and updating the jail's manual of policies and procedures [DE 150-2 at 23, 39]. In addition, Hertel indicates that he is personally aware of many inmates, including David Malone, Justin Barton, Donyea Fowler, and Emilio Sanchez, who have had trouble retrieving their stolen personal property (during 2004 to 2010). And, an affidavit by former inmate Deshawn Davidson affirms that in October of 2007, the property manager at the St. Joseph County Jail (although not Officer Miller-Lewis) refused to allow him to take his legal paperwork to RDC and advised him (incorrectly) that it was against the jail's policy for him to maintain possession of his legal materials [DE 150-2 at 19–20, 54–55].

---

[2] Defense counsel suggests that the times denoted on Hertel's shift/detail log history may reference the time when the information was entered into the system [DE 152 at 3], however, no affidavit or other admissible evidence from the defense clarifies this fact.

## II. Standard of Review

On summary judgment, the moving party bears the burden of demonstrating that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must therefore construe all facts in the light most favorable to the non-moving party, making all reasonable inferences in its favor. *Cung Hnin v. TOA, LLC*, 751 F.3d 499, 503 04 (7th Cir. 2014). A "material" fact is one the substantive law identifies as impacting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When there is a genuine issue as to any such material fact and a reasonable jury could return a verdict in favor of the nonmoving party, summary judgment is inappropriate. *Id.* Conversely, where a factual record exists that would not allow a rational jury to find for the non-movant, there is no genuine issue of fact for trial and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## III. Discussion

Prisoners are entitled to meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 824 (1977). The right of access to the courts is the right of an individual, whether free or incarcerated, to obtain access to the courts without undue interference. *Snyder v. Nolen¸* 380 F.3d 279, 291 (7th Cir. 2004). The right of individuals to pursue legal redress for claims that have a reasonable basis in law or fact is protected by the First Amendment right to petition and the Fourteenth Amendment right to substantive due process. *Id.* (citations omitted). Denial of access to the courts must be intentional; "simple negligence will not support a claim that an official has denied an individual of access to the courts." *Id.* at 291 n.11 (citing *Kincaid v. Vail*,

969 F.2d 594, 602 (7th Cir. 1992)). To establish a violation of the right to access the courts, an inmate must show that unjustified acts or conditions hindered his efforts to pursue a legal claim, *Nance v. Vieregge*, 147 F.3d 591, 590 (7th Cir. 1998), and that he suffered actual injury. *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that *Bounds* did not eliminate the actual injury requirement as a constitutional prerequisite to a prisoner asserting lack of access to the courts).

In short, to prevail on his access to courts claim, Hertel will have to prove that Defendants, acting under color of law, intentionally destroyed Hertel's legal materials which hindered his efforts to pursue a non-frivolous legal claim and that he was harmed by Defendants' conduct. *See id.*; *see also* Federal Civil Jury Instructions of the Seventh Circuit, 8.02 (rev. 2009). As mentioned, the only issues contested by the Defendants' motion for summary judgment is whether the Defendants personally and intentionally played the requisite role in the permanent loss of Hertel's legal materials.

**A.     Officer Miller-Lewis**

Hertel accuses Officer Miller-Lewis of intentionally depriving him of his legal materials. The Defendants offer just two arguments to refute this accusation; to wit, that Officer Miller-Lewis wasn't in fact at the jail, and Hertel has failed to produce evidence that she intentionally stole or deliberately destroyed Hertel's legal materials. However, Officer Miller-Lewis's affidavit on this point stands in direct contradiction to Hertel's affidavit which affirms that Officer Miller-Lewis specifically confiscated his materials on the date and at the time in question [DE 150-2 at 54, ¶ 11]. In entertaining a motion for summary judgment, the Court may not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*,

7

530 U.S. 133, 150 (2000). Those functions belong to the jury. *Id.* Thus, a question of material fact exists as to Officer Miller-Lewis's presence at the date and time in question.

Accepting the inference for purposes of this motion that Officer Miller-Lewis was indeed present, the Court turns to the issue of whether Officer Miller-Lewis acted intentionally by stealing or deliberately destroying Hertel's legal materials. The Defendants summarily conclude that no evidence exists showing that Officer Miller-Lewis acted intentionally or deliberately [DE 152 at 3]. In contrast, Hertel has presented evidence tending to show that despite the jail's not actually having a policy to confiscate legal documents, Officer Miller-Lewis told Hertel that the policy was to take his legal documents upon his transfer. And in spite of Officer Miller-Lewis's admitted duty to contact the person listed on the Inmate Property Release Form and return inmate property, including legal documents, Officer Miller-Lewis failed to contact Sandra Canniff within thirty days of Hertel's transfer. Officer Miller-Lewis then remained non-responsive to direct and repeated attempts by both Sandra and Ryan Canniff to retrieve Hertel's legal documents. At some point thereafter, the documents went missing and have never been returned to Hertel.

The proof that Hertel has provided, while minimal and circumstantial, at least creates a question of fact as to whether Officer Miller-Lewis acted intentionally in this case by confiscating and failing to return Hertel's legal documents upon his transfer to RDC, especially given her alleged false representation about the jail's legal document retention policy, her failure to comply with a known duty to return inmate property to the designated contact person, and her failure to respond to repeated requests for Hertel's legal materials. Such a question is more appropriate for a jury.

Construing the facts and inferences in the light most favorable to Hertel, a reasonable jury could conclude that Officer Miller-Lewis was present at the time in question and that she acted intentionally to steal or destroy the materials. Therefore, the Court denies the motion for summary judgment on the claim against Officer Miller-Lewis based solely on the grounds raised in Defendants' motion.

**B.      Warden Lawson-Official Capacity**

"An official-capacity suit is not a suit against the official as an individual; the real party in interest is the entity." *Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 382 (7th Cir. 1988). Municipalities may be held liable for damages under § 1983 when a governmental policy or custom caused the alleged violation of the plaintiff's rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Specifically, the Supreme Court has recognized three particular grounds on which a municipality can be held liable under § 1983, that is, when there exists: (1) an express policy that would cause a constitutional deprivation if enforced; (2) a common practice that is so widespread and well-settled that it constitutes a custom or usage with the force of law even though it is not authorized by written law or express policy; or (3) an allegation that a person with final policy-making authority caused a constitutional injury. *Rossi v. City of Chi.*, 790 F.3d 729 (7th Cir. 2015) (citing *Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 844 (7th Cir. 2004)). The Defendants argue that Hertel has failed to show that Warden Lawson is the final policymaker for the St. Joseph County Jail, and that Hertel has failed to establish a widespread practice that might constitute a custom or usage with the force of law.

With respect to the first contention of whether Warden Lawson is a final policymaker, "[w]hether a particular official has final policymaking authority is a question of state law."

*Wragg v. Vill. of Thornton*, 604 F.3d 464, 468 (7th Cir. 2010). And simply because a municipal employee has decision-making authority, even unreviewed authority, with respect to a particular matter does not render him a policymaker as to that matter. *Ball v. City of Indianapolis*, 760 F.3d 636, 643 (7th Cir. 2014) (citing *Kristofek v. Vill. of Orland Hills*, 712 F.3d 979, 987 (7th Cir. 2013); *Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011)). A municipality must have delegated authority to the individual to make policy on its behalf. *Id*. (citing *Valentino v. Vill. of South Chi. Heights*, 575 F.3d 664, 676 (7th Cir. 2009).

While Warden Lawson's (unsigned) responses to interrogatories indicate that the Sheriff is the final policymaking authority for the St. Joseph County Jail [DE 147-4], Hertel has provided evidence (jail inspection reports) suggesting that in fact Warden Lawson has been named the Sheriff's designee to make policy decisions for the jail, such that she is responsible for the "review" and "updating" of the jail's manual of policies and procedures. In response to Hertel's designated evidence, Defendants merely argue that simply because Warden Lawson was present for jail inspections and reviewed jail policy does not mean she is a policymaker [DE 152 at 3]. However, the defense has not offered any admissible evidence to explain what the jail inspection reports meant when they listed Warden Lawson as the designee of the Sheriff to "update" jail policy. Thus, it is unclear if Warden Lawson's updating of any policies are then subject to review by the Sheriff or a higher official. In short, Hertel's evidence has created a question of fact as to whether the Warden reviewed *and* updated the jail's policies per the Sheriff's designation with unfettered discretion, such that she might have been designated a final policy-maker. In addition, Hertel's evidence has also permitted the inference on summary judgment that Warden Lawson violated his rights by remaining unresponsive to the Canniff's
10

multiple inquiries and attempts to retrieve his legal documents and to Hertel's subsequent letter in June advising Warden Lawson of the problem. At this point, given the disputed issues of fact, whether or not Warden Lawson actually violated Hertel's rights by prohibiting his access to the courts will be for the jury to decide.

On summary judgment, Hertel has also presented sufficient evidence to permit the inference that the jail has an established practice or custom so widespread or persistent that might rise to the level of a policy which could fairly be attributed to the municipality. *See e.g.*, *Dye v. Wargo*, 253 F.3d 296, 299 (7th Cir. 2001) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985) ("considerably more proof than [a] single incident will be necessary . . . to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the unconstitutional deprivation")).

Per Officer Miller-Lewis, it is her job to contact an inmate's designated person to schedule a time for them to pick up an inmate's belongings, and after thirty days of the inmate's release/transfer the property may be discarded. Despite this policy, Hertel and his family members allege they were unable to secure his belongings, including his approximate forty pounds of legal documents, even after making repeated requests of Officer Miller-Lewis, Warden Lawson, and Mr. Keith Rininger. Additionally, Hertel is personally aware of at least four other identified inmates who have experienced similar problems retrieving their belongings which were allegedly stolen at the jail, and a fifth inmate, Deshawn Davidson, who had his legal paperwork confiscated upon his transfer from the jail to RDC. Both Hertel and Davidson were incorrectly instructed that the jail had a policy against retention of legal documents upon transfer from the jail to the RDC. According to Hertel, he notified Warden Lawson of the problem, but

11

she did not respond to Hertel's letter complaining about the situation concerning stolen items. Hertel has also affirmed that upon his various transfers to the jail since May 2008, jail employees have consistently attempted to confiscate his legal paperwork, despite Hertel's having personally informed Warden Lawson of the same problem long ago. This evidence does indicate a possible systematic deprivation of inmate property, which resulted in the loss of Hertel's and another inmate's legal materials.

Assuming for now that Hertel can demonstrate that he intended to pursue non-frivolous legal claims and he suffered actual injury—issues not contested by the defense in their motion—a reasonable jury could determine that there exists a common practice of confiscating inmate property, resulting in the taking of legal materials, that is so widespread it constitutes a custom for which the municipality can be held liable. Accordingly, summary judgment on this claim is not appropriate.

**C.      Warden Lawson-Individual Capacity**

It is well established that Warden Lawson cannot be held liable for damages under § 1983, unless she was personally involved in the alleged wrongdoing. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Thus, supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable; rather supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001). They must in other words act either knowingly or with deliberate, reckless indifference. *Id*. Thus, to prevail on this claim, Hertel will need to show that Warden Lawson was, indeed, aware of the theft of his legal materials and

could have prevented or corrected the violation of his rights but deliberately chose to condone the violations.

As previously discussed, Warden Lawson's knowledge of the problem is evidenced by the affidavits of Sandra and Ryan Canniff, both of whom claim that during the thirty days following Hertel's May 1, 2008 transfer from the St. Joseph County Jail, they left numerous messages concerning the retrieval of Hertel's belongings with staff members, *including Warden Lawson* [DE 150-2 at 10–12]. In fact, in Warden Lawson's affidavit, she admits to knowing about the box of missing legal materials by the time of Hertel's transfer from the jail [DE 147-1]. And per Hertel's affidavit, along with the affidavits by the Canniff's, Warden Lawson never followed-up on the situation within thirty days after Hertel's transfer from the jail, despite being advised that this was a repeated problem at the jail.

This circumstantial evidence creates a disputed question of material fact as to whether Warden Lawson had personal knowledge of the alleged violation of Hertel's rights but did nothing to correct it by allowing an inference that Warden Lawson was aware of several incidents where inmate possessions, including legal materials, were deliberately confiscated (permanently) or stolen by jail personnel. Although Warden Lawson attests to being unaware of any such incidents, the Seventh Circuit has confirmed that summary judgment is not the time for the Court to make credibility determinations or weigh the evidence. *See Reeves*, 530 U.S. at 150. Those functions belong to the jury, *id.,* and for that reason Defendants' motion for summary judgment is denied with respect to this claim.

## IV. Conclusion

For the foregoing reasons, the Defendants' second motion for summary judgment is **DENIED**. Additionally, Hertel's motion to strike the Defendants' reply brief is **DENIED** because it was timely filed (and aside, consideration of the Defendant's reply brief does not change the outcome of this order ruling in favor of Hertel); and Hertel's motion to strike Officer Miller-Lewis's second affidavit is **DENIED**, because it was properly filed despite Hertel's disagreement with its contents.

SO ORDERED.

ENTERED: August 10, 2015

                                            /s/ JON E. DEGUILIO  
                                            Judge  
                                            United States District Court